FEDERAL DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| BITUMINOUS CASUALTY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 5:10-cv-06057 |
| ) | |
| COLONIAL LIMESTONE, INC., ) | |
| JIMMY LYLE YOWELL, ) | |
| and CAROL LEA YOWELL, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff BITUMINOUS CASUALTY COMPANY, by and through its attorneys, BETH C. BOGGS and BOGGS, AVELLINO, LACH & BOGGS, L.L.C., and for its Petition for Declaratory Judgment, states as follows:

**Allegations Common to All Counts**

1.  At all times relevant herein, Bituminous Casualty Company (hereinafter "Bituminous") is and was a corporation authorized to transact business in the State of Missouri, with its principal place of business in the State of Illinois and incorporated under the laws of the State of Illinois.

2.  Upon information and belief, at all times relevant herein, Defendant Colonial Limestone, Inc., (hereinafter "Colonial"), is and was a Missouri corporation with its principal place of business in Mercer County, Missouri.

3. Upon information and belief, at all times relevant herein, Defendants Jimmy Lyle Yowell and Carol Lea Yowell (hereinafter "the Yowells") are and were citizens of the State of Missouri, and reside in Mercer County, Missouri.

4. At all times relevant to this action, Plaintiff, Bituminous and Defendant, Colonial Limestone, Inc., were parties to contracts of insurance for commercial general liability.

5. The policies were in effect from June 1, 2004 to December 31, 2006, with policy numbers CLP 3190033, CLP 3193891, CLP 3215910, CLP 3231231 and CLP 3235156. The policies are attached as Exhibits A through E, respectively.

6. Colonial and the Yowells were parties to a mining lease on a property owned by the Yowells, from June 1996 to June 2006.

7. The lease permitted Colonial to mine at the property, and the Yowells would receive royalties from the sale of the mineral products. In addition, the lease provided the Yowells with an additional royalty for any mineral products Colonial brought onto and stored on the property from elsewhere.

8. In September of 2007, the Yowells reentered the property, and allegedly prevented Colonial from entering the land to retrieve equipment on the property.

9. Colonial filed a Petition for Replevin and Conversion in the Circuit Court for Mercer County against the Yowells, and the Yowells have filed Counterclaims alleging fraudulent misrepresentation, breach of contract, interference with a business relationship, and negligence against Colonial and its officers. The Yowells' Fourth Amended Counterclaims, filed in the Circuit Court of Mercer County, are attached as Exhibit F.

10. The Yowells' claims arise out of Colonial's alleged failure to operate its business

properly, improper mining, incomplete and inadequate reclamation of the property, failure to abide by rules and regulations for mining, failure to maintain proper insurance, misrepresentation of the amount of mined product, mining in improper places, failure to pay all royalties due to the Yowells, and Colonial's alleged hindering of the Yowells' ability to find a subsequent mining lessee.

11. The Yowells have claimed their damages exceed $500,000.

12. The policies contain in substantially similar form, the following Insuring agreement for Coverage A:

   1. Insuring Agreement

      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

      * * *

      b. This insurance applies to "bodily injury" and "property damage" only if:

         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

         (2) The "bodily injury" or "property damage" occurs during the policy period.

      * * *

      c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of

3

Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.     "Bodily injury" or "property damage" deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

13.     The policies contain in substantially similar form, the following pertinent definitions:

    9.     "Insured contract" means:

        a.     A contract for lease of premises. However, that portion of the contract for a lease of a premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

        b.     A sidetrack agreement;

        * * *

        f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

4

Paragraph f. does not include that part of any contract or agreement:

1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass, or crossing;

2) That indemnifies an architect, engineer or surveyor for injury for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawing and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention, or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises

5

that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or containment, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed in your contract if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

6

Case 5:10-cv-06057-SOW   Document 1   Filed 06/02/10   Page 6 of 18

>>Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

>b. Does not include "bodily injury" or "property damage" arising out of:

>>(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

>>(2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or

>>(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

>a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

>b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

21. "Your product":

>a. Means:

>(1) Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

>>(a) You;

7

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product," and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts, or equipment furnished in connection with such work or operations;

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work," and

(2) The providing of or failure to provide warnings or instructions.

14. The policies also contain in substantially similar form, the following pertinent exclusions to Coverage A:

8

**Exclusions**

\* \* \*

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternate dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**f.   Pollution**

**(1)**   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

9

- **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

- **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

- **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

- **(i)** Any insured; or

- **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

10

- **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

- **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

- **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

11

> > **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".
>
> However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\* \* \*

**j.   Damage to Property**

> "Property damage" to:
>
> (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> (2) Premises you sell, give away, or abandon, if the property damage arises out of any part of those premises;
>
> \* \* \*
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
>
> > \* \* \*
>
> Paragraphs (3), (4), (5), and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

12

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l.  **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

m.  **Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal recall, inspection, repair, replacement, adjustment, removal, or disposal of:

(1) "Your product";

13

(2) "Your work"; or

(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

15. The Policies contain in substantially similar form the following insuring agreement for Coverage B:

   1. Insuring Agreement

      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      * * *

      b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

16. The Policies contain the following pertinent exclusions for Coverage B:

   **2. Exclusions**

      **a. Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" cause by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

14

      **b.**    **Material Published With Knowledge Of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    \* \* \*

      **d.**    **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

      **e.**    **Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in absence of the contract or agreement.

      **f.**    **Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

17. Bituminous requests this Court declare that Colonial is not entitled to coverage or defense under the general liability policies for any and all claims or causes of action arising from the Yowells' Fourth Amended Counterclaims filed in Mercer County.

18. An actual controversy exists between Plaintiff and Defendants herein. Litigation concerning this matter is currently pending.

19. The actual controversy herein is justiciable and recognized by this Court, such controversy being dependent upon the construction of the policy and endorsements and is capable of judgment in this action. Resolution of this matter raised in its declaratory judgment will dispose of all issues between the parties arising out of the policy.

15

20. There is no other litigation pending involving the parties herein concerning rights and liabilities under the policy and endorsements.

### Count I – Commercial General Liability Policies

21. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as the incidents alleged by the Yowells are actually alleged breaches of the lease between them, and such claims do not represent "occurrences" as defined in the policy and under Missouri law.

22. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as the damages alleged by the Yowells do not represent "property damage" as defined in the policy and under Missouri law.

23. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as their causes of action did not arise until after the end of the policy period.

24. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as the damages alleged by the Yowells do not represent "personal and advertising injury" as defined in the policy and under Missouri law.

25. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as there is an exclusion for damage to property the insured owns or rents, and the property was rented by Colonial

26. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as there are "business risk exclusions," which do not permit coverage for "property damage" to Colonial's "product" or arising out of Colonial's "work", and the damages claimed by the Yowells arise out of Colonial's "work" and/or "product".

27. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as there are exclusions for knowingly violating the rights of another, publishing material with knowledge of its falsity, and for criminal acts, and the damages alleged by the Yowells arise out of Colonial's alleged knowing violation of the Yowells' rights, Colonial's publishing of material regarding the property while having knowledge of the material's falsity, and for alleged acts of Colonial and/or its agents.

28. The policies do not provide coverage for the claims contained in the Yowells' counterclaims, as there exclusions for any liability assumed or arising out of a contract or agreement, and the damages claimed by the Yowells arise out of contracts between Colonial and the Yowells.

29. For some or all of the foregoing reasons, there is no coverage under the policies for the damages and claims alleged by the Yowells against Colonial.

30. Bituminous asks this Court to declare that Colonial is not entitled to any coverage under the Commercial General Liability Policies for any claim or cause of action arising from the Yowell's Counterclaims

WHEREFORE, Plaintiff Bituminous Casualty Company respectfully requests that this Court enter a declaratory judgment granting the following:

(a) That the Commercial General Liability Policies do not afford coverage to Colonial Limestone, Inc., for any of the claims or causes of action arising from the Counterclaims of Jimmy Lyle Yowell and Carol Lea Yowell;

(b) For judgment that Plaintiff is not obligated to provide a defense or settle on behalf of or indemnify Colonial Limestone, Inc., for any matter arising out of the

17

Case 5:10-cv-06057-SOW   Document 1   Filed 06/02/10   Page 17 of 18

Counterclaims filed by Jimmy Lyle Yowell and Carol Lea Yowell;

(c) To adjudge, determine, and decree that Plaintiff is not liable for payment of any judgment that might be entered against Colonial Limestone, Inc., for any matter arising out of the Counterclaims filed by Jimmy Lyle Yowell and Carol Lea Yowell;

(d) For such other relief as this Court deems just and proper.

Respectfully submitted,

**BITUMINOUS CASUALTY COMPANY**

By: _____
Beth C. Boggs, #43089
BOGGS, AVELLINO, LACH & BOGGS, L.L.C.
7912 Bonhomme Avenue, Suite 400
St. Louis, MO 63105
(314) 726-2310 – Phone
(314) 726-2360 – Fax
E-Mail: bboggs@balblawyers.com
**Attorneys for Plaintiff**